UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRIYA TAHILIANI and KIM TSAI,<br><br>    Plaintiffs,<br>  v.<br><br>CITY OF EVERETT, MAYOR CARLO DEMARIA and CITY OF EVERETT SCHOOL COMMITTEE,<br><br>    Defendants. | Civil Action No.: 23-cv-10609-WGY |

**COMPLAINT AND JURY DEMAND**

**INTRODUCTION**

Priya Tahiliani was well situated to represent the city's population in perhaps its most important role – providing for the education of Everett's children, 83.5% of whom are students of color. Tahiliani inherited the position from Frederick Foresteire, whose 30-year tenure was terminated after years of sexual harassment, assault and other misconduct involving multiple school department employees, for which he was finally criminally convicted and is now required to register as a sex offender. Tahiliani and Kim Tsai, her Deputy Superintendent, rose to meet the challenges running the school district, many of which were immediate including re-establishing trust between the school administration, its employees and the community, as well as navigating the COVID-19 pandemic.

However, the honeymoon did not last. The institutional racism championed by Everett Mayor Carlo DeMaria and his cronies for the School Committee was and still is palpable. Mayor DeMaria had relatively little involvement with the School Committee until Tahiliani and Tsai – two non-white women – were appointed. Their appointment upset his apple cart. Where

district level jobs under Foresteire had been 100% white, Tahiliani and Tsai brought about changes.  They instituted a new practice and began hiring non-white applicants.

Once that started, Mayor Demaria suddenly expressed interest in the School Committee.  He broke the law to make himself a Committee member, and with the assistance of his proxies on the Committee did all he could to deprive Tahiliani and Tsai of their ability to meaningfully execute their duties and responsibilities.  Tahiliani and Tsai were subjected to demeaning and racist comments, abusive and disparate treatment, and unjustified and highly subjective discriminatory and retaliatory attacks.  Their main offense?  Being women of color who refused to maintain a "Whites only" hiring policy for district level jobs.

Both Tahiliani and Tsai filed discrimination complaints against Mayor DeMaria and his accomplices.  The response?  Among other actions detailed in this complaint, surveillance cameras were illegally installed in the ceiling of Tahiliani's office, all of which were removed by the FBI and are now subject to investigation.  Members of the School Committee moved to strip Tahiliani from her role as Secretary of the School Committee.  The Mayor ceased providing school funding above the required legal minimums – where he used to give the school department anywhere from $550,000 to $5.5 million dollars over the minimum required by law – and he blocked Medicaid reimbursements.

Because Tahiliani and Tsai opposed Everett's discriminatory practices, the School Committee then took the ultimate step, voting to reject renewal of Tahiliani's new contract.  Tahiliani's tenure will thus prematurely end, and Tsai now knows if she engages in protected conduct, she too will continue to suffer.

Both Tahiliani and Tsai have been subjected to blatant and overt acts of discrimination and retaliation at the hands of Mayor DeMaria and his cronies.  And it is ultimately Everett's

school children who are forced to suffer.  That's why the school children and their parents have taken to the streets to protest.

Tahiliani and Tsai come before this Court to declare they will not stand by while their workplace civil rights are extinguished, and to stand with the students of Everett against Mayor DeMaria and his unlawful pursuits.

They're not "Everett enough."  That's what DeMaria and his cronies claim about Tahiliani and Tsai.  That's code for "they're not white like us."  Despite the seismic shift of its population, the discriminatory and retaliatory spirit of Everett is alive and well.  But not for long.

Now, DeMaria and his crew will have to answer for their actions.  Not from their hiding spot inside City Hall, but before a jury.  Even if it's their last official act and costs them everything, Tahiliani and Tsai seek to ensure that Mayor DeMaria and his racist agenda must not come before equity and education in Everett.

## THE PARTIES

1. Plaintiff Priya Tahiliani ("Tahiliani") is the first Superintendent of color in the history of Everett.

2. Plaintiff Kim Tsai ("Tsai") is the first Deputy Superintendent of color in the history of Everett.

3. Defendant City of Everett is a duly incorporated municipality of the Commonwealth of Massachusetts.

4. Defendant Carlo DeMaria ("DeMaria") is the Mayor of Everett, and a member of the City of Everett School Committee.

5. Defendant City of Everett School Committee ("School Committee") is the body

which supervises the Superintendent of Schools.

## JURISDICTION AND VENUE

6. This Court's jurisdiction is based upon 28 U.S.C. § 1331 (Federal Question). In addition, this Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is appropriate under 28 U.S.C. § 1391(b) and (c) (Substantial Part of the Events and Contacts), as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and this Court has personal jurisdiction over all named parties.

8. Talihiani and Tsai have satisfied all prerequisites and conditions precedent necessary to entitle them to seek remedy against Defendants.

## STATEMENT OF FACTS

9. In December of 2019, Tahiliani was appointed by unanimous vote of the School Committee to serve as Superintendent of the Everett Public Schools ("EPS"). She succeeded Frederick F. Foresteire, a White male who held the position for 30 years before retiring abruptly in December of 2019 amid sexual harassment allegations for which he was recently criminally convicted.

10. Tahiliani identifies as Indian. She is the first person of color to serve as Superintendent of the EPS, a diverse district in which 83.5% of students are students of color.

11. In her role as Superintendent, Tahiliani reports directly to the School Committee of the City of Everett ("School Committee"). The School Committee was composed of 9 members prior to January of 2021, when it expanded to 10. By way of a Home Rule Petition, the City of Everett changed its City Charter to make the Mayor a voting member of the School

Committee.  At all times relevant hereto, all but one member of the School Committee is White.

12. The Mayor, Carlo DeMaria, has served in office since 2007.  Mayor DeMaria never endeavored to become a voting member of the School Committee when Foresteire served as EPS Superintendent.  No effort was made to implement this change when Janice Gauthier was appointed interim Superintendent.  It was not until Tahiliani, the first minority Superintendent was appointed, that Mayor DeMaria took this unprecedented step.

13. DeMaria made this change during the middle of a pandemic, without any public hearings in violation of M.G.L. c.43B §10(b).  The School Committee's own attorney notified the Office of the Attorney General of this violation of law.

14. Throughout her tenure as Superintendent, Tahiliani has been consistently recognized for her strong performance.  For example, she was named President of the Board of Directors of the Massachusetts Association of Teachers of Students of Second Languages (MATSOL).  In addition, she was appointed by the Massachusetts Association of School Superintendents (M.A.S.S.) to the Women's Educational Leadership Network Planning Committee, served as the keynote speaker at the upcoming Women's Educational Leadership Network Conference, served as keynote speaker at City Year's Annual Women's Breakfast, and was asked to serve on a panel alongside Commissioner Riley hosted by BU Wheelock in March of 2022.  Additionally, she was appointed to be the Urban Superintendents Network representative for the M.A.S.S. Race Equity Diversity and Inclusion Team.  In May 2022, Tahiliani received the President's Award from M.A.S.S.

15. Despite her accomplishments and achievements, Tahiliani has been subjected to unlawful discrimination based upon my race by members of the School Committee.  This unlawful conduct has included, without limitation, being subjected to demeaning and racist

comments by members of the School Committee, abusive and disparate treatment, and unjustified and highly subjective discriminatory and retaliatory attacks regarding her performance.

16. In or around June of 2020, Tahiliani established a group of family liaisons to support families in Everett. In light of the fact that 33% of Everett students are English Learners, 83.5% of students are students of color, and 67.7% of families speak a first language other than English, Tahiliani filled this department's positions with staff of color who spoke the major languages of the District. Tahiliani also implemented a robust system for real time interpretations so that our families can have meaningful access to their student's education.

17. As recommended by the Department of Education and Secondary Education ("DESE"), public school districts are encouraged to increase diversity of staff that represent the demographics of the student population. To achieve this goal, Tahiliani began to hire staff that were culturally diverse, including establishing important new positions such as the Family Engagement Manager and the Chief Equity Officer, both of which were filled with minority candidates. As a result of this, Mayor DeMaria began to openly accuse her of being a racist to members of the School Committee and the school community, stating that she only hired people of color and that she hates White people.

18. Under Tahiliani's White predecessor, 100% of the leadership team at the district level was White. During her tenure, that number has decreased to 80%, with 20% of the leadership at district level being employees of color.

19. Stated otherwise, Tahiliani ended the historic "whites only" hiring policy at district level.

20. During his reelection campaign, DeMaria told School Committee members and

EPS employees that they needed to "get [Tahiliani] out." He has publicly threatened staff to "remember what team [they] are on." In fact, DeMaria widely circulated his intention to appoint two White males, Charles Obremski and Paulo Lambressa, to lead the district as Superintendent and Deputy Superintendent, rather than considering the Deputy Superintendent, Kim Tsai, who is an Asian female, to be the predecessor.

21. As one of the only Asian and Pacific Islander Deputy Superintendents in the Commonwealth of Massachusetts, Kim Tsai was recruited by Tahiliani to join her in Everett to serve the students of Everett.

22. Despite Tsai excelling in her work performance during her tenure as Deputy Superintendent, she has been subjected to unlawful discrimination based upon her race and gender, and her affiliation with Tahiliani in the form of intimidating, hostile, and/or offensive conduct perpetuated by Everett School Committee members Millie Cardello, Joseph Lamonica, Michael McLaughlin, and Mayor Carlo DeMaria, that has resulted in interference of her work performance and the cultivation of a hostile work environment.

23. Tsai filed a charge of discrimination against DeMaria, the School Committee and the City. Tahiliani was told that Tsai's charge was a reason her contract would not be renewed.

24. In addition to trying to oust Tahiliani (and Tsai), DeMaria has consistently deferred to White males rather than addressing issues with Tahiliani or other minority females on the leadership team.

25. For example, DeMaria has frequently requested that the City's Chief Financial Officer, Eric Demas (also a White male), be called up at School Committee meetings to comment on school finance, instead of Tahiliani, or the School Department's Chief Financial

7

Officer, Anu Jayanth, another Indian female. Instead of communicating directly with Jayanth, his staff circumvents her and communicates directly with the Director of Facilities, another White male.

26. During a City Council meeting that Tahiliani participated in, instead of allowing her to answer any questions, two other White males, Charles Obremski and Steve Bond were called to answer questions related to the school district. DeMaria has also directly communicated with the Music Director (yet another White male) to make requests rather than directly communicating those to Tahiliani.

27. These departures from the established practice of having the Superintendent speak on these topics, among other actions, demonstrates Mayor DeMaria's discriminatory animus towards Tahiliani and Tsai.

28. DeMaria also exhibits discriminatory behavior due to Tahiliani's gender and has a history of being discriminatory towards other women in the community, particularly former City Councilor Gerly Adrien. His review of Tahiliani's performance was rife with demeaning and stereotypical language reflecting gender bias. Specifically, DeMaria gave Tahiliani an "Unsatisfactory" rating under the standard of "Engagement" in her performance evaluation.

29. Specifically, he wrote, "A review of the recordings of School Committee meetings will illustrate that her posture, facial expressions and other physical mannerisms visibly change during discussions and debates of issues. Superintendent Tahiliani's tone, tenor and demeanor during discussions of different opinions also changes."

30. Referencing her facial expressions and the need to smile (in the face of the overt discrimination she's faced) constitutes sexist expectations that the previous male Superintendent would never be held to. This is not an isolated incident. In City Council

meetings, DeMaria made comments on Councilor Adrien's facial expressions, stating that he would like to turn off her video and/or mute her.  DeMaria also accused her of screaming or pointing her finger, yet a review of the video of that meeting proved his accusations were false.

31.    Mayor DeMaria also makes racist statements to Everett students. During a panel for students involved in the Everett Police Department Liaison internship program, including Tahiliani, Police Chief Steven Mazzie, and DeMaria, he proceeded to argue with a student regarding his status as a minority.  Mayor DeMaria stated that if he read all of the comments directed towards him that he would "hang himself."  A student requested that he refrain from using that phrase as it would be a trigger to others.  DeMaria was unwilling to acknowledge that his word choice was offensive to minority students.  Also during that panel, when Tahiliani spoke about challenges she faced as a female of color in the City of Everett, DeMaria cut her off from speaking.  When she excused herself    from the meeting as a result, DeMaria followed her to the parking lot and berated her, telling me that she knew her comments about facing challenges as a minority woman in Everett were untrue.  Quite the opposite.

32.    DeMaria has interfered with critical school services, such as enrichment programming, in order to avoid providing funding directly to the District.  For example, for at least the years of 2014 to 2019, when the Superintendent was a White male, DeMaria consistently provided the schools with funds over net school spending, which means he gave the school department anywhere from $550,000 to $5.5 million dollars over the minimum required by law.

33.    Since the first year of Tahiliani's tenure, DeMaria has not provided one cent over net school spending, which is the minimum required by law.  In fact, he was cited by DESE for not meeting the net school spending requirement for FY21.  DeMaria also refused to

appropriate the school's Medicaid funds directly back to the schools during Tahiliani's Superintendency, despite numerous requests for those funds. This was never the case during her White predecessor's tenure. DeMaria cared not that his racist conduct hurt the students.

34.     Such racist, sexist rhetoric, hostile and disparate treatment toward Tahiliani was not only exhibited by Mayor DeMaria, but also by School Committee Member Michael McLaughlin. McLaughlin is often abusive and demeaning, by abandoning Robert's Rules, talking over and interrupting her or refusing to allow her to speak. For example, at the May 27, 2021 the City Council meeting, McLaughlin invited Tahiliani's two White male subordinates (Steve Bond and Charlie Obremski) to speak instead of her and refused to invite her to speak even when probed by other Council members.

35.     McLaughlin's racist animus is further exhibited by his Freedom of Information Act ("FOIA") requests for interview notes for the hiring process for the Family Liaisons, Community Engagement Manager, and Chief of Equity, all of whom are staff of color. No such requests were made by McLaughlin for White hires. McLaughlin's higher level of scrutiny on minority staff hires is demonstrative of his racial animus towards minorities.

36.     Further, despite her objections to school committee members interfering with her ability to manage the day-to-day operations of the district, members of the School Committee continued to intentionally undermine Tahiliani. By way of example, two School Committee members attended a parent-teacher conference without her permission and in violation of the Classroom Visitation Policy, and they made comments that resulted in the staff member filing a Title IX and M.G.L. c.151B complaint against a School Committee member.

37.     Instead of allowing an investigation to move forward as required by law, School Committee members consistently blocked the investigation by leaving a School Committee

meeting early so that there was not a quorum in order to discuss the investigation. Even after notice was provided, the School Committee continued to thwart Tahiliani's ability to conduct a Title IX investigation and continued to violate the School Visitation policy to undermine her ability to manage the district. This was never done during her White predecessor's tenure.

38. Due to Tahiliani's efforts to initiate the Title IX investigation as required by law, McLaughlin and the members of the School Committee intensified their efforts to drive her out and retaliate against her. On Wednesday, January 12, 2021, the School Committee recommended that "Roman Numeral V: Superintendent's Report" on the School Committee Agenda would be stricken and that Tahiliani would no longer be required to attend School Committee meetings, but rather she would only be invited to speak on specific topics upon their request. Their justification for the School Committee's unlawful actions was that her Superintendent's Reports "clearly take a lot of work" and she should be relieved of that in order to spend more time with her family. This was never done during her White male predecessor's tenure.

39. The posted agenda for the January 18, 2022 School Committee meeting also included an item presented by McLaughlin calling for a 90-day hiring freeze on all non-classroom related positions, a move directed to suppress the cessation of the "whites only" hiring policy.

40. On information and belief, Tahiliani has the distinction of being the first Everett Superintendent to be denied federal reimbursements, Medicaid funding, and money above net school spending on behalf of the school system. She is also the first Superintendent for whom they have moved to strip the role of Secretary of the School Committee, to not be allowed to provide bi-weekly reports and updates, and to have their day-to-day responsibilities infringed

11

upon.

41. None of the above referenced discriminatory or retaliatory measures of this kind were ever introduced by the School Committee to silence or minimize the role of her White male predecessor, including when he was publicly cited for an ethics violation in 2009.  *See* https://www.mass.gov/decision/in-the-matter-of-frederick-foresteire-docket-no-08-0004.

42. In February 2022, Tahiliani filed a Charge of Discrimination at the MCAD detailing the above stated facts.

43. In response, DeMaria caused secret surveillance cameras to be installed in Tahiliani's office ceiling.

44. The FBI removed those and is currently investigating that unlawful wiretapping activity.

45. In November 2022, Tsai filed a Charge of Discrimination at the MCAD, documenting her concerns of discrimination at the hands of DeMaria and the School Committee.

46. In response, Tahiliani was informed that Tsai's Charge would be a reason that her contract was not renewed.

47. In response to Tahiliani and Tsai's protected conduct, on March 6, 2023, the School Committee, led by Mayor DeMaria, refused to renew Tahiliani's employment contract.

48. The pretextual reasons cited were (i) school security issues and (ii) school cleanliness issues.

49. During that same School Committee meeting, DeMaria specifically praised the school's security efforts.

50. To the cleanliness issues, it was Charles Obremski who failed to keep the

schools clean.  As a White man, he received no blame.  Further, the almost half a million dollars withheld from the schools by DeMaria could have been used to remedy those problems.

## CLAIMS FOR RELIEF

### COUNT I
### Retaliation – Title VII and G.L. c.151B
### (All Defendants)

51. Tahiliani and Tsai hereby restate and incorporate here the above paragraphs as if each were set out in its entirety.

52. Tahiliani and Tsai engaged in protected oppositional activity.

53. Tahiliani and Tsai each suffered adverse action as a result.

54. Tahiliani and Tsai have been subjected to actions which cause a chilling effect preventing others from engaging in protected activity.

55. As a consequence of the Defendants' actions, Plaintiffs suffered and continue to suffer damages in an amount to be determined at trial, including but not limited to:  loss of income, loss of employment benefits, other financial losses, loss of professional opportunities, loss of personal and professional reputation, loss of community standing, and emotional distress.

### COUNT II
### Race/National Origin Discrimination – Title VII and G.L. c.151B
### (All Defendants)

56. Tahiliani and Tsai hereby restate and incorporate here the above paragraphs as if each were set out in its entirety.

57. Tahiliani and Tsai have suffered adverse action and/or disparate treatment due to their race/national origins.

58.     As a consequence of the Defendants' actions, Plaintiffs suffered and continue to suffer damages in an amount to be determined at trial, including but not limited to: loss of income, loss of employment benefits, other financial losses, loss of professional opportunities, loss of personal and professional reputation, loss of community standing, and emotional distress.

## COUNT III
### Aiding and Abetting – Title VII and G.L. c.151B
**(All Defendants)**

59.     Tahiliani and Tsai hereby restate and incorporate here the above paragraphs as if each were set out in its entirety.

60.     Defendants aided and abetted each other in discriminatory/retaliatory acts against Plaintiffs.

61.     As a consequence of the Defendants' actions, Plaintiffs suffered and continue to suffer damages in an amount to be determined at trial, including but not limited to: loss of income, loss of employment benefits, other financial losses, loss of professional opportunities, loss of personal and professional reputation, loss of community standing, and emotional distress.

## COUNT IV
### Interference with Protected Rights – Title VII and G.L. c.151B
**(All Defendants)**

62.     Tahiliani and Tsai hereby restate and incorporate here the above paragraphs as if each were set out in its entirety.

63.     Defendants interfered with Plaintiffs' exercise of protected rights under c.151B.

64.     As a consequence of the Defendants' actions, Plaintiffs suffered and continue to suffer damages in an amount to be determined at trial, including but not limited to: loss of

income, loss of employment benefits, other financial losses, loss of professional opportunities, loss of personal and professional reputation, loss of community standing, and emotional distress.

## COUNT V
### Hostile Work Environment – Title VII and G.L. c.151B
**(All Defendants)**

65. Tahiliani and Tsai hereby restate and incorporate here the above paragraphs as if each were set out in its entirety.

66. Defendants have caused a hostile work environment for both Plaintiffs.

67. As a consequence of the Defendants' actions, Plaintiffs suffered and continue to suffer damages in an amount to be determined at trial, including but not limited to: loss of income, loss of employment benefits, other financial losses, loss of professional opportunities, loss of personal and professional reputation, loss of community standing, and emotional distress.

## JURY TRIAL CLAIM

Plaintiffs respectfully demand a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

- Award damages to be determined at trial;
- Order Defendants to cease and desist their unlawful conduct; and
- Award any all other such relief as the Court deems proper.

                              The Plaintiffs,

                              Priya Tahiliani and Kim Tsai,

                              By their counsel,

                              /s/ Benjamin Flam

                              Philip J. Gordon (BBO# 630989)
                              Benjamin Flam (BBO# 671853)
                              GORDON LAW GROUP, LLP
                              585 Boylston Street
                              Boston, MA 02116
                              Phone: (617) 536-1800
                              Fax: (617) 536-1802
                              pgordon@gordonllp.com
March 28, 2023                  bflam@gordonllp.com